IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE F.,[1] | ) |
| Plaintiff, | ) |
| v. | ) No. 21 C 1368 |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Christine F.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 18, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 22, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

# BACKGROUND

## I. Procedural History

On May 8, 2019, Plaintiff filed a claim for DIB, alleging disability since October 5, 2018, due to spinal stenosis, spondylosis, a herniated disc, and chronic pain syndrome. [Dkt. 13-1, R. 182-83, 217.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 83, 99.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held by telephone on July 1, 2020. [R. 36-69.] Plaintiff personally appeared by telephone and testified at the hearing and was represented by counsel. [R. 38-61.] Vocational expert ("VE") Leida A. Woodham also testified. [R. 61-68.] On July 20, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 18-27.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-3.]

## II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 18-27.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 5, 2018. [R. 20.] At step two, the ALJ concluded that Plaintiff's degenerative disc disease was a severe impairment. [R. 20-23.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 23.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that she can frequently stoop, kneel, crawl, crouch, and climb ramps, stairs, ladders, ropes, and scaffolds. [R. 23-26.] At step four, the ALJ concluded that Plaintiff would be able to

perform her past relevant work as an office helper and bank teller. [R. 26.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ alternatively concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 26-27.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v.*

*Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ

4

as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**II. Analysis**

Plaintiff argues that the ALJ (1) failed to adequately analyze at step 3 whether Plaintiff's condition met or equaled Listing 1.04, (2) did not properly consider Plaintiff's subjective symptom reports, and (3) erred in formulating Plaintiff's RFC. [Dkt. 19, Pl.'s Mem. at 4-16; dkt. 24, Pl.'s Reply at 1-5.] After reviewing the record and the briefs submitted by the parties, this Court agrees that the ALJ did not properly consider Plaintiff's subjective symptom reports and failed to support Plaintiff's RFC with substantial evidence. Because these failures warrant remand, the Court does not reach Plaintiff's additional arguments.

In determining Plaintiff's RFC, the ALJ found that Plaintiff could perform light work except that she can only frequently stoop, kneel, crawl, crouch, and climb ramps, stairs, ladders, ropes, and scaffolds. [R. 23.] Plaintiff argues—and the Court agrees—that the ALJ failed to build a "logical bridge" between the evidence and the ALJ's conclusions concerning Plaintiff's subjective symptoms and eventual RFC. [Pl.'s Mem. at 8.] *Beardsley*, 758 F.3d at 837. Since the ALJ's analysis was lacking, the Court is unable to evaluate whether substantial evidence supports the ALJ's conclusions and ultimate RFC determination, and remand is thus warranted.

After step 3, the ALJ primarily summarized Plaintiff's reported subjective symptoms, her medical records, and the state agency consultants' prior administrative medical findings. [*See* R. 23-26.] The first analysis in that section came when the ALJ concluded that the state agency consultants' opinions were "generally persuasive, well supported and consistent with the medical evidence at the time each was offered," but also explained that she was more persuaded by "Dr. Kim's opinion"—that Plaintiff could do light work with frequent stooping, kneeling,

5

crouching, crawling, and climbing ramps, stairs, ladders, ropes, and scaffolds—because it was rendered with access to "additional medical records available at that time." [R. 26; *see* R. 94-95.] The ALJ concluded her discussion of the medical opinions by stating that "[t]he additional evidence and testimony at the hearing level does not reflect any greater restrictions in physical functioning." [*Id.*] The next two paragraphs reflect the totality of the ALJ's analysis regarding Plaintiff's subjective symptoms and ultimate RFC:

> In reaching my findings, I have considered a variety of factors in accordance with SSR 16-3p and 20 CFR 404.1529(c)(3). I note my residual functional capacity finding is consistent with the most recent medical opinion of record by a State agency consultant (Exhibit 3A). The record does not contain any medical opinions from the claimant's treating or examining doctors imposing work-related limitations. While I acknowledge that the claimant describes limited daily activities, I find factors other than activities of daily living to be more persuasive in assessing her subjective symptoms and complaints and reaching the conclusion regarding her residual functional capacity. I do note, however, that her activities show she continues to carry laundry, is able to drive and travel independently, and despite testifying to falling often does not use a walker (Exhibits 9F/9; 14F/2; 20F/4). All of this evidence supports the finding that she is able to perform at least light exertional work.
>
> In summary, although the claimant has severe impairments, they do not preclude her from completing basic work related activities on a sustained basis. The above residual functional capacity assessment is supported by examination and evaluation reports by treating doctors, consulting doctors, and medical examiners. While I assess certain functional limitations, I do not find the claimant's testimony regarding the severity or frequency of her symptoms to be fully consistent with the evidence or supportive of any greater limitations or restrictions than those I have included in the residual functional capacity set forth in this decision.

[R. 26.]

This brief discussion raises more questions than it answers about how the ALJ viewed the medical evidence in crafting the RFC here. The ALJ had an obligation to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7; *see also Amanda M. v. Kijakazi*, No. 3:20-cv-50272,

2022 WL 1773780, at *3 (N.D. Ill. June 1, 2022) (mere summary of medical records is not the same as analysis); *Mark J. v. Saul*, No. 18 C 8479, 2020 WL 374676, at *5 (N.D. Ill. Jan. 23, 2020) (ALJ must build a logical bridge between record and RFC assessment and merely summarizing medical evidence is not sufficient). The ALJ summarized the evidence earlier in her decision, but the analysis in these two paragraphs is vague and untethered to any particular evidence—it does not have a citation to any medical examinations or findings, not even to the ALJ's earlier summary of the records. [*See* R. 26.] The most the Court can glean regarding the ALJ's reasoning in adopting the RFC from these paragraphs—and indeed, from the ALJ's decision as a whole—is that the ALJ (1) relied in part upon state agency consultant Dr. Kim's opinion, (2) viewed examination and evaluation reports as supporting the RFC, and (3) did not find Plaintiff's testimony about her symptoms, particularly about her activities of daily living, to be entirely consistent with the record evidence (more on that below). But this leaves the Court to fill in important blanks, such as *what* examination and evaluation reports in particular supported the RFC and *in what respect* they did so, as well as *what* evidence supported and was consistent with Dr. Kim's opinion. The lack of explanation from the ALJ means that the Court cannot now trace the ALJ's reasoning from the evidence to her conclusions to determine whether they are supported by substantial evidence. Simply put, there is no "logical bridge" from the evidence to the RFC in the ALJ's decision. *Beardsley*, 758 F.3d at 837.

Further, even a review of the ALJ's own summary of the medical evidence raises questions about her conclusions and whether she engaged in impermissible "cherry pick[ing]" of the record to come up with those conclusions, as Plaintiff also asserts. [Pl.'s Mem. at 8-9.] *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support [her] conclusion and explain why that evidence was rejected."). Plaintiff

7

had a cervical laminectomy on her alleged onset date, October 5, 2018. [R. 24.] The ALJ acknowledged continuing complaints of pain after surgery from Plaintiff along with some mixed physical examination findings on several occasions: (1) in January and February 2019, she had normal motor testing and strength but a positive straight leg test on the left, decreased sensation in her feet, tenderness in her thoracic spine, neck pain with rotation, flexion, and extension, a positive Spurling sign, and decreased sensation in both hands with intact strength, [R. 614, 626, 631]; (2) in April 2019, she had difficulty with tandem gait but "all normal physical examination findings," [R. 736]; (3) in June 2019, she had antalgic gait and difficulty getting in and out of a chair, [R. 839]; (4) in July 2019, she had reduced range of motion in the cervical and lumbar spine, brisk reflexes, intact coordination, normal strength, normal gait and no difficulty getting out of a chair, and some difficulty with heel and toe walking, [R. 847-49]; and (5) in January 2020, after a fall, she had normal strength in her upper extremities and 4/5 strength in her lower extremities, no sensory deficits, and a positive straight leg test on the right, [R. 1084]. [*See* R. 24-25.] The ALJ's later assertion that the chosen RFC is supported by Plaintiff's examination and evaluation reports seems to ignore the various abnormal physical findings that the ALJ recognized arose throughout Plaintiff's treatment, such as positive straight leg tests, a positive Spurling sign, reduced range of motion in her cervical and lumbar spine, antalgic gait and difficulty with heel and toe walking, and decreased sensation in her hands and feet. [*See id.*] Moreover, Plaintiff is correct that the ALJ's conclusion that Plaintiff had "all normal physical examination findings" during her April 2019 treatment visit overlooks that she had brisk reflexes, a positive bilateral Hoffman's sign, and a positive Romberg sign during that same exam. [Pl.'s Mem. at 9-10; R. 25 (ALJ decision), 736 (April 2019 treatment note).] Because the ALJ did not discuss this evidence with sufficient specificity when explaining her reasons for the

8

RFC, the ALJ impermissibly failed to confront contrary evidence that could indicate Plaintiff was more limited and explain why such evidence was rejected. *See Moore*, 743 F.3d at 1123.

The ALJ's discussion of Plaintiff's subjective symptom reports is likewise deficient. When evaluating a plaintiff's reports of her symptoms, in addition to the medical evidence, the ALJ may also consider a plaintiff's daily activities, intensity of pain and other symptoms, precipitating and aggravating factors, medications and their side effects, treatment received, and any other measures used to relieve symptoms. 20 C.F.R. § 404.1529(c). The Court will overturn the ALJ's subjective symptom evaluation if it is "'patently wrong,' meaning it lacks explanation or support." *Cullinan*, 878 F.3d at 603 (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "However, an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *see also Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

Here, the only factor for evaluating subjective symptoms that the ALJ explicitly discussed in any detail was Plaintiff's daily activities. [*See* R. 23-26.] The ALJ acknowledged the limited daily activities Plaintiff had referenced—presumably, the earlier referenced activities of attending her sons' baseball games, having one of her sons drive her most of the time because of her neck pain, going to the grocery store with help because she has difficulty lifting, preparing meals with breaks because of her neck pain, and having trouble sleeping at night because of pain—but found that factors other than activities of daily living were more persuasive in assessing Plaintiff's subjective symptoms. [R. 24, 26.] And then the ALJ noted, however, that Plaintiff's "activities show she continues to carry laundry, is able to drive and travel independently, and despite testifying to falling often does not use a walker." [R. 26.] The ALJ concluded that paragraph by finding that all of the evidence the ALJ had just referenced

9

supported a finding that Plaintiff could perform light work. [*Id.*] The ALJ failed to consider, however, certain limitations that Plaintiff had in her daily activities—for example, Plaintiff had fallen while carrying laundry, [R. 1080]—and overall the ALJ's brief conclusion leaves the Court uncertain as to whether she impermissibly equated Plaintiff's ability to perform household chores with an ability to work a full-time job. *See Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) ("We have previously cautioned ALJs that there are critical differences between keeping up with activities of daily living and holding down a full-time job.").

Even assuming that Plaintiff's daily activities are a legitimate basis for finding Plaintiff's subjective symptoms not entirely consistent with the record, the ALJ did not give any other reason why Plaintiff's subjective symptoms were consistent or inconsistent with the record. Plaintiff devotes large swaths of her brief to pointing out all of Plaintiff's pain reports to her doctors and her doctors' notes concerning her pain, that the ALJ did not discuss. [Pl.'s Mem. at 9-12.] In a case such as this, where Plaintiff has alleged significant and ongoing pain despite her treatment, it is troubling that the ALJ did not discuss whether and to what extent she found Plaintiff's testimony and reports of pain consistent or not with the other evidence in the case. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (explaining that ALJ cannot discount plaintiff's subjective symptoms just because her complaints of pain are not supported by objective evidence, but then evaluating her subjective symptom reports becomes critical). And the ALJ did not discuss the other regulatory factors, either. *See* 20 C.F.R. § 404.1529(c). Thus, because the ALJ's decision lacks specific reasons for her conclusion that Plaintiff's subjective symptoms were not entirely consistent with the record, it is patently wrong, meaning that it lacks sufficient explanation or support. *See, e.g., Darlene M. v. Kijakazi*, No. 19 CV 6389, 2021 WL

3773291, at *3-4 (N.D. Ill. Aug. 25, 2021) (remanding where ALJ failed to properly discuss regulatory factors).

In sum, the ALJ's decision lacks sufficient analysis for the Court to determine what led the ALJ to impose the particular RFC limitations. It is the ALJ's responsibility to adequately explain her reasoning in order for the Court to be able to review whether the decision is supported by substantial evidence. *See Scrogham*, 765 F.3d at 695. Because the ALJ did not fulfill that obligation here, the Court must remand the case for further consideration. *See, e.g., Darlene M.*, 2021 WL 3773291, at *6 ("Here the ALJ failed to provide even a cursory explanation for important findings in his RFC assessment, and as such it lacks the weight of substantial evidence.").

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 18] is granted, and the Commissioner's motion for summary judgment [dkt. 22] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 7/10/23

*[signature]*

BETH W. JANTZ
United States Magistrate Judge